Let's go back. Alvin, there are a number of plaintiffs here versus the United States, 2013, 51, 17. Mr. Keller, when you were ready. May I please, the court, I want to thank you for allowing me to present oral presentation today in this case. You've read the briefs, you're aware that this case involves the discharge of 2946 sailors in the middle of their tourist duty. You're aware of Section 1169 of the U.S. Code that says you cannot discharge a sailor in the middle of his tourist duty except if it's prescribed by the Secretary of the Navy. Now, in this case, the Secretary of the Navy did prescribe that an ERB, Enlisted Retention Board, be formed for the purpose of discharging men based on over-mandated quota, meaning more sailors than Congress authorized, or for rebalancing where there's too many people in one position. Well, lo and behold, they found out that they were below quota. It was fiction. They weren't over quota. Lo and behold, they found out after discharging these guys, for example, in the exhibit by Max Fish showed that after a hundred and something in one position were discharged, they replaced them with over 200 in the same position. So rebalancing was a fiction. So the ERB board... Excuse me, Mr. Cohen. Let me just ask you, though. Are you saying, I mean, if one were to accept your argument, wouldn't it mean that a branch of the military could never take sort of a manpower reduction operation, assuming it to a greater or lesser extent the action had been unnecessary? I mean, isn't what you're suggesting here, if we accept it, really going to handcuff the military in being able to regulate the number of men and women in its various branches? Your Honor, they can do exactly what you say if they stay within the prescribed regulations which state as follows, an administrative discharge issued to a serviceman prior to the expiration of his enlistment term is void if it exceeds applicable statutory authority or ignores pertinent procedural regulations or violates minimum concepts... But you would say that the first point that you quoted, statutory authority, is what kicks in here. On this particular argument about the manpower needs changing. The other points in the statute seem to be procedural arguments relating to how the ERB and the separation were affected. Procedural regulation, and we get into due process of that, they never give them any right to a board hearing, which the DOD instructions give all Navy sailors after six years a right to a board hearing. They repeal that later, but at the time they did and they refused everyone a board hearing under due process. They didn't have a right to a hearing. So they say the sailors have no constitutional rights. But more than that, we talk about violates minimum concepts of basic fairness. And the trial judge in their argument merely stated in that regard, each plaintiff received an in-person notification of their non-selection for retention. The court concludes that plaintiffs were afforded due process that did not violate minimum concepts of basic fairness. Because they were notified. That's fair. Just because they were notified. That's not true. Well, I think the response would be that in the circumstances of this particular administrative process, that was adequate. There are instances where when you have a removal from the military, for example, where there's a quote, a stigma attached to it, and so forth, then different procedural requirements kick in. You're absolutely right, Your Honor. And I'm glad you stated that. But this case does not evolve in that prescribed scenario. And let me say why. At the end of the judge's decision, she made this statement, which fits in with your argument, sir. It is of no consequence that some of the factual underpinnings of the ERB process might have been erroneous. It's of no consequence that they're wrong. It's erroneous. And then she states… Well, that's a reference to the, I guess you were miscalculation vis-à-vis what the manpower needs were, correct? All the errors that were made. But she's not, I don't think the judge there is referring to errors in the process that unfolded in her view. You would disagree with that. I think that was a reference to the fact that it turned out they didn't perhaps need to separate as many service personnel as they did. But it goes on, your honor. She goes on to state, quote, the predicted success of the ERB to address overmanning issues was a rational speculation. Now, I ask the question, if it's based on fiction, non-fact, and they're all wrong, why is that, quote, rational speculation? It's not rational speculation. Now, before I forget it, and you're going to make me forget it, the recusal. This judge represented the Navy for nine years before she stepped into a judicial chair. She didn't recuse herself. And the test was not whether or not she was impartial or how she felt about it. The test is whether or not there is an appearance of impropriety by the public or by society. And there definitely is. I present this scenario. Let's suppose that she took this case one month after she had quit working. She worked for the Navy and she worked for DOJ for a number of years. So should she then recuse from every government case where there's a DOJ lawyer involved? No, that's prior employment. But with the Navy, it's not just prior employment or association. It's representing the legal interests of the Navy. And so the representation of those legal interests that's carried on shows not impartiality, but it has an appearance of impropriety. So then as a lawyer, if you had a particular client that you had a lot of representation for, you become a judge, are you permanently barred from representing, from working on cases involving that particular client? Because we have lots of judicial ethics opinions that say no, that's not the case. Well, in my state there's a statute that says that, yes, in my state. I apologize, that's Oklahoma. But you can't. If you've represented somebody, you can't be the judge for their case. Moreover, this isn't representing an individual. It's representing an entity. Yes, it's representing the Navy. Well, I'll ask you this question. Let's suppose she got off the Navy, represented, and a month later she was a judge and the Navy had a case before her. That wasn't the case here. Okay, I haven't seen it. I mean, appearance of impropriety always involves the specific facts, and certainly the timing is relevant. I agree with you, Your Honor. But you would agree that a month later she would have the appearance of impropriety? No, I would not agree to any such thing, but certainly that would be a very different case than what we have here. Okay. Assuming it's the same case. If she would be an appearance of impropriety, the question is what date does that appearance of impropriety change? It doesn't ever change. I assume, oh, I'm sorry. I just want to pick up on something in your colloquy with Judge Moore. I assume from your discussion with Judge Moore that your concern about recusal here stems only from Judge Bush's prior association or employment with the Navy rather than her prior employment with DOJ. Correct. That's correct. The other thing is, as the fairness of the court. Because otherwise, Tony, you're off this case too, right? Prior employment with DOJ. Well, that's true. But that clarified that point. Would it be different if Judge Bush's employment with the Navy had been, say, 30 years ago? It was 16 or 17 years ago, 16 years ago. I don't know the answer to that. Maybe it can expire and maybe it can't. In my state, it can't expire. But here, maybe so. I don't know the answer to that. Court, please. Fairness is what I want to talk about. Because what the Navy took out of these people, this 2016, were people that would have been able to retire in what's called temporary early retirement authorization had they finished their tour of duty. They didn't take out people that were early sailors. They took out people that, some of them lacked a month being able to retire, contemporary early retirement. They discharged all those people on the doorstep of retirement. I ask you about fairness now. We're talking about fairness. Well, the question is lawfulness, unlawfulness, not how close you come to the line. I mean, there has to be a line with respect to the establishment, a loss of any right. So it's not, we don't sit here and weigh how close, how distant we are from the line. It's either lawful or it's not. Okay, I agree. And if it violates minimum concepts of basic fairness, according to case law, it's unlawful. And the concept of basic fairness is here, that they're on the doorstep of retirement. Some of them in a month can retire. They wipe out these people. Now, if this is allowed to stand, the court of police, if this is allowed to stand from now on, the Navy can ignore career sailors. They can fire anybody like they used to in the 40s and 50s in civilian law the day before they retire, saying you don't get retirement. You don't have to say why, because we've got a right to discharge you under prescription by the Secretary of the Navy. That should not stand. In this case, we're giving a precept or a authority to do that in the future if this case stands. Thank you. We will save your rebuttal time. Mr. Meikle. Thank you, Your Honor. Mr. Keller. May it please the court. This is a case of first impression from my research. I've known several officer discharge cases where the court has looked into the matter and determined that those were nonreviewable, but this is the first where I've seen 1169 challenged. But in this case, the record, I think, is quite clear. In March of 2011, the Secretary of the Navy determined that a difficult decision, that they had a requirement to rebalance the force to meet current and strengths requirements, as well as the fact that they needed to reshape the force because in 31 ratings, they were out of balance. To do that, pursuant to... What's the key document to comply with 1169? Is it the March 23, 2011 letter? The March 23, 2011 letter is the only document required by 1169. The requirement set forth in statute, Congress, pursuant to its authority of Article I, Section 8, to regulate the navies, has prescribed to the Secretary of the Navy that you have the authority to man the navy, but if you're going to downsize the navy under 1169, the only requirement statutorily that I'm aware of is to provide notice to the Undersecretary of Defense. In this case, they notified the Deputy Secretary of Defense. Primarily, that is the one level above the Undersecretary for political reasons. In that case, he notified the Secretary that we have an overbalance in certain ratings. To correct that overbalance and to better position the navy to carry out its missions in the future, we are going to selectively target those with an enlisted reduction board. Then he also told the Secretary that I plan to carry out this board notifying all sailors in November through a navy admin message, as well as through the public affairs channels. Then after that, we're going to conduct the board in two phases. The appellants are 300 of the 29,000, excuse me, 2,946 numbers that were separated. They were separated after notice. The navy provided extra notices, as well as throughout the process, a current review of the quotas in place to ensure that the reduction was as limited as possible and specifically targeted. They also eased some regulations regarding the conversion into certain other specialties, and 125 sailors who were selected for separation were able to convert, as well as they also provided some certain incentives to go into the Selective Reserve so they could continue their navy career. Mr. McClellan, I have just one question. At the beginning of your argument, you used what struck me as maybe a term of art. You said the action that was undertaken by the ERB was to bring the navy into compliance with end-strength requirements. What is end-strength? Was that the term you used? Yes, it is. What does that mean? As I meant to use end-strength requirements, I was talking about the mandate that Congress said that the force couldn't exceed a certain level. By the end of the fiscal year. Right. Which is why I believe that the mandated release date was 1 September of 2012. It was for June. They set it at 1 June for 2012, but then extended it out. I'm sorry to interrupt you, but just so I understand, when we see the term end-strength retirement or hear it in an oral argument, what it means is the mandated force level from Congress as of the end of some fiscal year. That's right. In this case, I want to specifically address, if I may, Your Honor, two points that they make. The documents that were not allowed under the record regarding the articles that were post-decision and post-separation in December 2012 as well as the affidavit, the certain articles in the 2013 period that talked about where Admiral Van Buskirk, who was the admiral in charge of navy personnel, started that they might have withdrawn or separated. They were understrength by 5,000 or 8,000. There's kind of a difference between balancing the force at the senior NCO level, the E5, E6, E7 level, and the drawdown of being understrength of 8,000. As Admiral Van Buskirk explained, the navy had been drawing down since the mid-'90s after the first Gulf War, where it was going from 580,000 sailors to what they projected in 2014 to be 314,000 sailors. In 2012, they knew that they were also overstrength, but they were only specifically concerned with those 31 ratings that were at 103% strength. Therefore, to ensure that there was an upward mobility for those junior sailors, they had to cull the force at those certain ratings and at certain year groups, and that's what they did. But the fact that they might have been understrength by 8,000 does not mean that the balancing in those certain ratings were improper. It's not comparing apples to apples. What about Mr. Keller's point of unfairness, that certain sailors were cut off when they were getting close to achieving benefits? If I was one of those veterans, I would believe it was unfair as well. But the secretary has to make those hard calls in the volunteer force to ensure that they make the end strength. In the end, his primary concern is that the Navy can carry out the missions that the President of the Congress asked the Navy to carry out. In this case, the Navy thought that they had to do this, and they tried to figure out a way to do this in the smartest way without affecting the least number of veterans. And so they provided things like notice. They provided an ability to convert. They provided, in some cases, they enacted the Temporary Early Retirement, which is a discretionary action for the Navy. They provided certain separation transfer benefit programs to the sailors. When you say the right to convert, does that mean someone who was going to be discharged could say, wait a minute, I choose to go into this other specialty, or could that request only be made at the start of the ERB process? My understanding of the process, Your Honor, it had to be made at the start of the process. There were only certain ratings that they could convert into, and just because you applied for conversion did not mean that, in fact, you'd be allowed to convert. No, no, I understand that. Certain ratings require, obviously, years of schooling that they just couldn't do. Now, your argument about justiciability, if you are correct, would mute our ability to reach the issues we're discussing now. Is that right? Your Honor, I believe our argument on justiciability goes to the two ends of the process. To the merits, right. To the decision of the Secretary, yes, Your Honor, that we need to rebalance the force, as well as to the decision of what were the 946 sailors that were fully qualified but not best qualified. Those, we believe, are clearly non-justiciable. Is there any forum? So your argument about non-justiciability is based in part on our Atkins decision, as I understand it, right? I would say Atkins, and I think even more so as I re-read the briefs and the cases. Sargison and Murphy are closely analogous cases. Sargison and Murphy were essentially reduction boards for officers, while this is a reduction board, obviously, for enlisted sailors. Is that an absolute meaning? Suppose that the Secretary issued an edict that just was absolutely clear. We're going to terminate anyone two weeks from retirement. This is an ERB. Identify these people. Cut them off. Then is it really still not justiciable anywhere? Is there no place to bring a claim if you feel like something really discriminatory has occurred in the process of identifying you in the ERB? I realize those are not the facts of this case. No, I understand. Of course. I'm just wondering, is there any forum for review of the legitimacy of the Secretary's decision? In the justiciability cases that I've looked at in preparing for this argument, I don't know if there's a bright line test, but I do know that it appears that, I actually think Sargison has some very good language how it talks about the process. You look at the issue being challenged, and then you look at, has it been, at least in the military context, has the Constitution spoken to any specific power? For instance, in this case, Congress has the authority to regulate and provide the navies. Under that power, it's given the Secretary broad authority to do these drawdown procedures. However, I know this court, and Helferty and his Christian in promotion matters, has looked at constitutional matters when it came to suspect class. But if you look at the Supreme Court case of Rosker v. Goldberg or Gilligan v. Morgan, even though they all are dismissed saying we can't review that because it's non-justiciable, that conclusion is reached essentially after they've reviewed the programs and determined that we've gone up as far as we can, and now we're at a place where there's no test of standards to apply, and therefore this is as far as we can go for separation of powers. So you would say, Mr. Bigelow, that the, and picking up on Judge Moore's question, you would say that, you would not say that your justiciability argument applies to Mr. Keller's contentions with respect to the way the ERB process was conducted, namely that there wasn't a hearing, that notice was defective. You would say those points that he makes, although you disagree with them, are not barred by a lack of justiciability. I would agree with that, Your Honor. I just want to understand the contours of your justiciability claim. The Atkins decision, as Your Honor mentioned, Holly, I think all go to those points where we're not going to look at the overall decision that we're going to have a board, and once we have the board, the results of the board, but we're going to make sure that the board was conducted in accordance with statute and regulation. In this case, we believe it was, and we think the trial court did a very good job of analyzing the regulatory provisions. The DODI is very broad and essentially says, the Secretary, you can separate people prior to the term of their enlistment expiring under programs that you deem necessary. The notification procedures that the appellants argue were appropriate are not required under that specific part of the regulation. What about the recusal issue with respect to prior employment with the Navy? First, I want to address that. To answer your one question. The appearance question. Judge Bush worked for the Department of Justice from 1976 to 1987, and then she worked for the Department of the Navy from 1987 to 1996, and I believe the case we cited, I want to say the Laird case, involving this court with then Chief Judge Markey, is instructive. In that case, it appears that he disqualified himself when he was just, maybe he still was a general in the Air Force Reserve, or had just gotten out of the Air Force Reserve. But as time passed, he realized that, you know, the temporal issue. So I would agree with Mr. Keller, if the facts were one month after leaving the Navy, Judge Bush took the case, there would be an objective person looking in from the outside that would say this is something that could be an inappropriate reason for her to sit on the bench. But not here, over 17 years since her job with the Navy had ended. And there's no indication that within the Navy she had dealt with an issue of this nature? None that I'm aware of, and I don't believe plaintiffs have raised any. Plaintiffs raised four things below. One, that it was a Navy lawsuit. Two, DOJ represented the United States. Three, that Judge Bush might still know someone who works in the Navy at a senior level. And four, there was a possible federal pension benefit that could be affected. And as the judge specifically stated, there was no pension benefit matter. She had not participated in this litigation, did not participate in any issues like this, and that her Navy service ended 17 years. And she thought, and I believe under the abuse of discretion standard, that this court reviews those decisions upon, that it was an abuse of discretion to determine that an objective person looking at that would say that a judge who takes an oath of office to uphold the law, just like all other officers do, would not find that she was in any way biased towards the Navy or the United States. And I also believe the reading of the opinion shows that the judge went out of her way to parse through plaintiff's complaint and parse through plaintiff's papers to try to make sure that every issue that these veterans raised was fully and thoroughly reviewed and investigated. So if anything, we don't believe there's any bias on the part of Judge Bush. And if anything, she went that extra mile to make sure that these veterans had their day in court and that the services made sure that every right that they were due was given to them. Subject to your questions, we'd ask that the judgment of the trials court is affirmed. Thank you, Mr. Mickel. Mr. Keller has up to four minutes of rebuttal time. Thank you, Your Honor. It doesn't matter what Judge Bush thinks about herself or how she cleanses herself. It's the appearance to society that she doesn't have an appearance of insocriety is what the test is under Section 455. But first, I would like to speak to what was pointed out, that what does a sailor do when he's on the doorstep of retirement and the Navy discharges him? What are his rights? He has no rights. He has no rights according to this. He has no constitutional rights according to this. He had a regulation, a DOD instruction that said after six years, you have a right to a board hearing. They all asked for one. They were all refused one. They weren't given one. So a sailor has no due process rights. Criminals do, but not sailors. Now, I want to give credit to Vice Admiral Buskirk. He stood up in December, three months after they were discharged, and said, we overshot. He admitted the Navy made a mistake. They were wrong. The Navy has admitted they were wrong. Can't they be given a chance to atone for it? The people that don't admit they're wrong is only their lawyers. The Navy has admitted that they made a mistake, and they should have to atone for it and compensate these people. So I respectfully request that the case be sent back, assigned to a different judge, and that these sailors be compensated for all damages emanating from what is an illegal, procedurally wise, and unfair discharge. Thank you. Thank you, Mr. Kelly.